UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| CONNIE HOWES, Individually and as Personal Representative of the Estate of TROY HOWES;<br><br>                    Plaintiff,<br><br>        vs.<br><br>YANKTON MEDICAL CLINIC, P.C., and MICHAEL PIETILA, M.D.;<br><br>                    Defendants. | 4:15-CV-04177-KES<br><br><br>MEMORANDUM OPINION AND ORDER |

Defendants, Yankton Medical Clinic, P.C. (YMC) and Michael Pietila, M.D., move the court for an order to dismiss Count 7 (Unlawful Tying in Violation of Section 1 of the Sherman Act) and Count 8 (Monopolization of Medical Specialist Care in Yankton County) of plaintiff's complaint. Plaintiff, Connie Howes, resists the motion. Howes moves to amend her complaint.

For the following reasons, the court grants the motion to amend the complaint and denies the motion to dismiss.

**BACKGROUND**

The facts as alleged in the proposed amended complaint are:

YMC is a South Dakota corporation that provides medical services in Yankton, South Dakota. It is the only convenient location for many patients who require specialist care in Yankton County.

Dr. Pietila is a licensed South Dakota pulmonologist and is employed by YMC. As a part of his duties at YMC, he has supervisory and management control over medical and office staff who provide care, medical information, and billing information to patients. He is also the Chief of Staff, Medical Director of ICU services at Avera Sacred Heart Hospital and a member of its executive board. The board makes privileging decisions for the hospital. Dr. Pietila and other physicians were sued on November 13, 2014—stemming from a privileging decision that allowed Dr. Alan Soosan, a felon using an alias, to perform unnecessary surgeries on patients. Dr. Soosan was named in dozens of other lawsuits alleging similar claims (Soosan Lawsuits). In response, on August 24, 2015, YMC terminated future medical care of any patients who had filed suit against YMC or any of its providers.

Connie Howes is a resident of Yankton, South Dakota, and the Personal Representative of the Estate of Troy Howes. Connie was married to the decedent, Troy. On May 16, 2014, the Howes executed affidavits as witnesses against Dr. Soosan. Troy was treated at Avera Sacred Heart Hospital in April 2015 by Dr. Pietila for sleep apnea. On May 5, 2015, Troy again saw Dr. Pietila for sleep apnea at YMC. Dr. Pietila prescribed a BiPAP machine to assist Troy in breathing during sleep. A follow-up visit was scheduled on August 3, 2015, but Troy and Connie were unable to make it

2

due to a death in the family. Troy's insurance provider required a follow-up visit for continued use of the BiPAP machine.

Connie attempted to reschedule the missed appointment, but YMC would not allow her to do so. YMC told Connie that Troy had to pay the entire outstanding account balance before an appointment would be scheduled. Connie explained that she and Troy had an agreement with YMC to pay $20 per month towards the account balance while Troy continued to receive treatment and that they had made their payments. Connie also showed the representative Troy's Medicare and Medica cards that would cover his visit. YMC still refused to schedule an appointment. After discussing the situation with Troy, Connie called Dr. Pietila to sort out the situation, but she did not reach him. Troy's condition deteriorated from his stress over the lack of access to treatment. He died on September 22, 2015.

Connie alleges that YMC's and Dr. Pietila's refusal to treat Troy was an intimidation tactic in response to their affidavits in the Soosan Lawsuits. In addition, YMC has a monopoly on pulmonology services in the Yankton area and used that power to intimidate Connie, Troy, and other patients.

Other patients are proposed plaintiffs. Mary Weibel was denied care at YMC due to her lawsuit against Dr. Soosan. Timothy and Judy Bockholt, residents of Nebraska, similarly were denied care at YMC after suing Dr. Soosan. Clair Arens, a Nebraska resident, was also denied care at YMC

due to her lawsuit against Dr. Soosan. Finally, Dianne Arens, resident of Nebraska, was denied care at YMC because she too sued Dr. Soosan.

Howes filed her complaint in state court on October 13, 2015, alleging causes of action for negligent infliction of emotional distress, intentional infliction of emotional distress, tortious interference with a business relationship, breach of contract, breach of fiduciary duty, conspiracy, unlawful tying in violation of section 1 of the Sherman Act, and monopolization of medical specialist care. Docket 1. Defendants removed the action to the United States District Court for the District of South Dakota, Southern Division on November 12, 2015. Docket 1. Defendants then moved to dismiss Count 7 (Unlawful Tying in Violation of Section 1 of the Sherman Act) and Count 8 (Monopolization of Medical Specialist Care in Yankton County). Docket 5. Howes sought leave to amend the complaint to add new plaintiffs on February 25, 2016. Docket 33.

## DISCUSSION

## I.    MOTION TO AMEND COMPLAINT

Howes moves to amend her complaint to make the following changes to her complaint: (1) add other parties impacted by defendants' conduct; (2) substantiate the allegations presented in the original complaint; and (3) add a new cause of action for corporate interference with doctor/patient relationship. Defendants oppose the motion.

In the Eighth Circuit, courts consider motions to amend before motions to dismiss. *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 955–56 (8th Cir. 2002). A motion for leave to amend is committed to the sound discretion of the district court. *Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015) (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)). "A party may amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Because it has been more than 21 days since defendant was served, leave of court is required.

Motions to amend are freely granted when justice so requires.  Fed. R. Civ. P. 15(a). Leave to amend is denied only if evidence exists "such as undue delay . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Connie seeks to add additional plaintiffs to the complaint. When the complaint is amended to join other plaintiffs, Rule 20(a)(1) "allows multiple plaintiffs to join in a single action if (i) they assert claims 'with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;' and (ii) 'any question of law or fact common to all plaintiffs

5

will arise in the action.'" *In re Prempro Products Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010). The other parties that Connie seeks to add were denied care after suing YMC. Docket 33-1 ¶ 9. Troy's injuries arise out of the denial of care as well. Docket 1 ¶ 93. The complaint alleges that the denial of care occurred due to YMC's monopoly power. So, Troy's injuries and the new plaintiffs' injuries arise out of the same transaction and share common questions of law and fact. Thus, the motion to amend the complaint is granted.

## II.   MOTION TO DISMISS

Plaintiffs claim that YMC has a monopoly in Yankton County for medical specialist care. Docket 1 ¶¶ 123–28. Defendants move to dismiss Counts 7 and 8 for failing to state a claim. Docket 6.

Granting a motion to amend the complaint renders a motion to dismiss the original complaint moot. *Pure Country*, 312 F.3d at 956. Accordingly, the defendants' original motion to dismiss is moot. Because defendants anticipated making a motion to dismiss if the complaint were amended (Docket 37) and in the interest of judicial economy, the court will consider the motion to dismiss as if it were directed at the amended complaint. *Sallis v. Pavlak*, No. 09-CV-3614 JMR/JJG, 2010 WL 3384912, at *3 (D. Minn. Aug. 25, 2010); *see, e.g., Bishop v. Minn. Dep't of Human Servs.*, No. CIV. 14-1898 ADM/SER, 2015 WL 4920262, at *5 (D. Minn. Aug. 12, 2015) ("The Court acknowledges that at times courts have treated

a proposed amended complaint as the operative complaint for the purposes of an already-filed motion to dismiss, and have then proceeded to consider whether the defendant is nonetheless still entitled to dismissal.").

After the original complaint and answer were filed, both parties filed numerous documents. "A court generally may not consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim . . . ." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). For purposes of this motion, the court has only considered the facts and arguments presented in the amended complaint and answer, disregarding the further filings.

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion to dismiss, the court may consider the complaint, some materials that are part of the public record, and materials embraced by the complaint. *Porous Media Corp.*, 186 F.3d at 1079. The complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual content in the complaint must "allow the court to draw a reasonable inference that the

defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

### A.    Interstate Commerce

Under the Sherman Act, the anticompetitive act must either "occur[] in the flow of interstate commerce or, where wholly local in nature, substantially affect[] interstate commerce." *Huelsman v. Civic Ctr. Corp.*, 873 F.2d 1171, 1174 (8th Cir. 1989) (citing *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241 (1980); *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984). Here, the activities of YMC are not in interstate commerce, so the dispositive question is whether, as a matter of "practical economics," the challenged activity had a substantial effect on interstate commerce. *Pariser v. Christian Health Care Sys.*, Inc., 816 F.2d 1248, 1253 (8th Cir. 1987) (citing *Hosp. Building Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 745 (1976)).

The complaint must "adequately allege[] the nexus between defendants' conduct and interstate commerce." *Huelsman*, 873 F.2d at 1174 (citing *Hosp. Bldg. Co.*, 425 U.S. at 742 n. 1). "The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's [Rule] 12(b)(6) motion." *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 558 (8th Cir. 1998) (citation omitted). Invoking the jurisdiction of the Sherman Act requires more than "merely identify[ing] a relevant local activity and

presum[ing] an interrelationship with some unspecified aspect of interstate commerce." *Huelsman*, 873 F.2d at 1174–75 (citing *McLain*, 444 U.S. at 242). For example, though a hospital is local, it may affect interstate commerce by purchasing out-of-state supplies, treating patients who come from out of state, and accepting money from the federal government through Medicaid and private out-of-state insurance companies. *Hosp. Bldg. Co.*, 425 U.S. at 741.

Here, Howes has alleged a substantial effect on interstate commerce. Four of the six plaintiffs are Nebraska citizens. YMC accepts federal funding through Medicare. Out-of-state patients and federal funding are specific aspects of interstate commerce. Thus, Howes has pleaded this element of an antitrust claim sufficiently.

## B. Antitrust Standing and Injury

To have standing to bring an antirust claim, "a plaintiff must establish the following: (1) the causal connection between the alleged antitrust violation and the harm to the plaintiff; (2) improper motive; (3) whether the injury was of a type that Congress sought to redress with the antitrust laws; (4) the directness between the injury and the market restraint; (5) the speculative nature of the damages; and (6) the risk of duplicative recoveries or complex damage apportionment." *Lovett v. General Motors Corp.*, 975 F.2d 518, 520 (8th Cir. 1992). The injury must be to prices, quantity or quality of goods or services, and not to a plaintiff's own welfare. *Mathews v.*

*Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) (citing *Willman v. Heartland Hosp. East*, 34 F.3d 605, 611 (8th Cir. 1994)).

Here, plaintiffs were denied care at YMC.  The quantity of services available to them in the relevant market was zero due to YMC's monopoly power. The Seventh Circuit has recognized that denial of care due to filing a malpractice suit is an antitrust injury. *Williams v. St. Joseph Hosp.*, 629 F.2d 448, 453 (7th Cir. 1980). In *Williams*, all doctors in the city agreed to deny care to patients who filed malpractice suits. *Id.* While the Eighth Circuit has not addressed this issue, this court anticipates the Eighth Circuit would follow the holding in *Williams.* Here, the specialists at YMC are all the specialists in the city. The injury in *Williams* and plaintiffs' injury are the same. In sum, plaintiffs have antitrust standing because they have alleged that YMC used its monopoly power to deny them care so it could gain an improper advantage in the Soosan litigation. The damages are concrete and directly related to the restraint. Because plaintiffs have suffered an antitrust injury, plaintiffs have standing to bring their claim.

### C. Conspiracy

The elements of a Section 1 claim are (1) an agreement or conspiracy (2) that imposes an unreasonable restraint on trade. *Willman*, 34 F.3d at 610-12. Such a conspiracy is not possible as a matter of law between a corporation and its employees unless those employees have an independent personal stake and stand to benefit from conspiring to restrain trade.

10

*Morton Bldgs. of Neb. Inc. v. Morton Bldgs.*, *Inc.*, 531 F.2d 910, 917 (8th Cir. 1976). But, "a conspiracy between corporations might arise if the directors, officers, representatives, or other employees are working for two or more entities." *St. Jude Med.*, *Inc. v. Intermedics*, *Inc.*, 623 F. Supp. 1294, 1299–300 (D. Minn. 1985).

Here, plaintiffs allege that YMC, Dr. Pietila, and unnamed coconspirators conspired to deny them medical care. YMC and Dr. Pietila cannot conspire because Dr. Pietila works for YMC. But, YMC claims no control over the hiring decisions at Avera that led to the Soosan lawsuits. Thus, the amended complaint adequately alleges a conspiracy between YMC, Dr. Pietila, and Avera as an unnamed coconspirator.

### D. Tying Arrangement

A "plaintiff may prove a per se tying violation . . . by demonstrating that two distinct products are tied, that the defendant has sufficient power in the tying product market to restrain competition in the tied product market, and that the tied product involves a 'not insubstantial' amount of interstate commerce." *Marts v. Xerox*, *Inc.*, 77 F.3d 1109 (8th Cir. 1996).

Here, plaintiffs have pleaded adequately the interstate commerce element. Additionally, plaintiffs allege that two distinct products are tied: the medical specialist market and the medical malpractice market. Although plaintiffs were not required to purchase a product or service in order to receive care at YMC, plaintiffs had to refrain from one product—filing

11

medical malpractice suits—in order to receive another—specialist care. Thus, the complaint adequately alleges the elements of tying arrangement.

## CONCLUSION

The court concludes that the proposed plaintiffs have an injury arising out of the same transaction or occurrence. So, the motion to amend the complaint is granted.

The court finds that the motion to dismiss the original complaint is moot and that the amended complaint would survive a motion to dismiss Counts 7 and 8.

Thus, it is

ORDERED that the defendants' motion to dismiss (Docket 5) is denied.

IT IS FURTHER ORDERED that the Howes' motion to amend the complaint (Docket 33) is granted.

DATED this 17th day of August, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

12